**UNITED STATES OF AMERICA**
**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**YVETTE JONES**

*Plaintiff*

**v.**                                                    **File No.:**

                                                         **Judge      Mag**

**METROPOLITAN HUMAN SERVICES DISTRICT,**
**STATE OF LOUISIANA,**
**ROSE ANDREWS,**
**DONNA FRANCIS and**
**JUDGE CALVIN JOHNSON,**
*Defendants*

VERIFIED COMPLAINT

COMES NOW REVA LUPIN, Attorney for the Plaintiff. YVETTE JONES ("Ms. Jones"), for a Complaint against the Defendant, METROPOLITAN HUMAN SERVICES DISTRICT, ("MHSD"), who states and alleges as follows:

1. This action is for declaratory and injunctive relief and for damages to redress the deprivation of rights secured to the plaintiff by 42 U.S.C. §1983; (Civil Action for Deprivation of Rights; 42 USC §12112 (Americans with Disability Act; 42 U.S.C. §2000(e) et seq. ("Title VII"); Family Medical Leave Act ("FMLA"); Age Discrimination in Employment Act ("ADEA"); Rehabilitation Act of 1973; La. C.C. art. 2315(A) (tort); and the Fourteenth Amendment of the Constitution of the United States.

JURISDICTION

2.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343 (4), 2201, 2202, 42 U.S.C. §1983; (Civil Action for Deprivation of Rights; 42 USC §12112 (Americans with Disability Act; 42 U.S.C. §2000(e) et seq. ("Title VII); Family Medical Leave Act ("FMLA"); Age Discrimination in Employment Act ("ADEA"); Rehabilitation Act of 1973; and the Fourteenth Amendment of the Constitution of the United States.   Jurisdiction to grant injunctive and declaratory equitable relief as well as damages is invoked pursuant to the above representations.

3.     On May 2, 2012, plaintiff, who had filed a charge with EEOC based on discrimination as well as retaliation and, was given her "Right to Sue" (Exhibit 1, Right to Sue); however, at the conclusion of the EEOC mediation, plaintiff requested from EEOC personnel as well as a telephonic  follow-up reminder that her charge be amended to include gender discrimination, onset of harassment to December 1, 2008 and agency changed from Metropolitan Human Services District to State of Louisiana which was ignored by EEOC.

PLAINTIFF

4.     Plaintiff, YVETTE JONES, employed by MHSD since January 22, 2008 is an African American female citizen of the United States, over the age of 40 residing in the State of Louisiana, Parish of Jefferson, who's constitutional and civil rights were violated.

DEFENDANTS

5.     Named Defendants are:

2

a. METROPOLITAN HUMAN SERVICES DISTRICT, which is an agency of the STATE OF LOUISIANA operating under the administrative wing of the Louisiana Office for Citizens with Developmental Disabilities and receives funds from the federal government.

b. ROSE ANDREWS AND DONNA FRANCIS, are the supervisors of the plaintiff, who acted outside the scope of their employment with Donna Francis head butting the plaintiff and colluding to conceal said tortuous and criminal conduct.

c. CALVIN JOHNSON coordinated and conspired to hide and/or not make available documents indicating tortuous and criminal conduct that were sent to MHSD utilizing certified mail and directly faxed to Judge Calvin Johnson and Sirwana Granger.

## STATEMENT OF FACTS

6.      MHSD, which is an agency of the State of Louisiana operating under the administrative wing of the Louisiana Office for Citizens with Developmental Disabilities, has approximately 175 employees..   The employees in the Developmental Disabilities Services unit are predominantly African-American females, save for two African-American males.

7.      MHSD has indicated that it is under a mandate to be privatized and in conjunction with that privatization, it has been insinuated that because of the reprisal of filing a charge the plaintiff will either be laid off in line with the budget cut issued by Governor Jindal or will not be continued with the privatization of the MHSD notwithstanding her ability, experience, and knowledge.

8.      Plans for plaintiff's dismissal have been initiated by lowering her performance evaluation which was not based on the plaintiff's outstanding performance.

3

9.      Ms. Jones has suffered on-going discrimination, disparate treatment, and verbal and physical abuse which culminated with a battery which occurred on March 1, 2012.  The battery was never reported by Ms. Jones' immediate supervisor, Rose Andrews, as was required by the agency.

10.     Prior attempts to seek internal remedies have failed due to coordinated efforts by Ms. Andrews and Ms. Francis –Ms. Jones' direct supervisors to prevent complaints and grievances from proceeding up the chain of command (i.e., the battery upon Ms. Jones).

11.     In the days following the battery, Ms. Jones met with the Human Resources department, particularly with Sirwana Granger, and Meghan Ferris, a MHSD attorney. Ms. Ferris, for an unknown reason who did not identify herself as an attorney and Ms. Jones was told repeatedly by Ms. Granger that "a complaint had not been filed" despite Ms. Jones mailing a complaint letter via certified mail and by faxing the same correspondence to both Sirwana Granger and Judge Calvin Johnson, but to no avail. Ms. Jones sought relief by filing a complaint with the EEOC. At the EEOC mediation on September 19, 2012; Judge Johnson represented that he was there in his capacity as the legal representative for the State of Louisiana. Meghan Ferris and Sirwana Granger were also present.

12.     Ms. Jones has suffered discrimination in violation of the Americans with Disabilities Act (ADA) and the Rehabilitation Act. Ms. Andrews and Ms. Francis refused to give fair or adequate accommodation to Ms. Jones in non-compliance with the Americans with Disabilities Act. Despite Ms. Jones' supervisors' previous request for a letter from her physician confirming that Ms. Jones has a hearing deficiency, there has been no effort to accommodate Ms. Jones' disability.  Ms. Francis, in particular, routinely screams in an unprofessional manner at Ms. Jones

4

during work related conversations. However, no effort has been made to provide any ADA compliance by either Ms. Jones' supervisors or the agency.

13.     The Americans with Disability Act and the Rehabilitation Act requires that an employer provide reasonable accommodations to an employee with a disability.  Under the ADA, an a person who has a physical or mental impairment that substantially limits one or more major life activities, has a record of such impairment, or is regarded as having such an impairment is a protected person.  Major life activities are activities that an average person can perform with little or no difficulty such as walking, breathing, seeing, hearing, speaking, learning or working.

14.     Ms. Jones has been routinely discriminated against because of her age.  Ms. Jones' expertise was such that upon their assignment to the unit, Ms. Jones was told to train both Ms. Jones' current immediate supervisor Ms. Andrews and the unit director (Ms. Andrews's supervisor, Donna Francis, as well as newer employees on social work policies and procedural matters, without any commendations or evidence of Ms. Jones' meritorious conduct.  The same persons who were trained by Ms. Jones ultimately conspired to deliberately submit unfavorable reviews of Ms. Jones' work as reflected in employee evaluations, Ms.  Jones' expertise has not been recognized, rather she has been persecuted.  Ms. Jones' expertise renders Ms. Jones more qualified than both Ms. Andrews and Ms. Francis-- the people who have supervised and harassed Ms. Jones—as well as the persons whom they often hire and promote within the office that are younger and less qualified.

15.     Ms. Jones has routinely been the victim of Equal Pay/Compensation and Family Medical Leave Act – Ms. Jones has routinely been the victim of this type of discrimination through repeated pretextual and/or deliberate interference with her personnel evaluations aimed to

prevent salary increases and promotions.  In addition, Ms. Jones was routinely subjected to denials of leave and was required to provide personal medical records and documentation even if Ms. Jones' children had doctor's appointments.  Ms. Jones was subjected to higher scrutiny regarding for work related home visits while other employees in the same or similar circumstances were not and were granted leave and vacations more readily.  Ms. Jones has been subjected to denial of educational leave (which would have merely adjusted Ms. Jones' report time from (7am-3:30p, rather than 8a – 4:30p), and would not have reduced Ms. Jones' actual time spent on the job, while other on the job are allowed to take leave—even to run non-job related errands and gamble at a nearby casino while on the clock-- without such scrutiny from Ms. Andrews and Ms. Francis.  As a comparison, Ms. Jones has been treated adversely upon all requests for annual or medical leave as well as leave to bring her children to medical appointments.

16.    As a black female, working with other black women in the social work department of MHSD, Ms. Jones has been subjected to continued discrimination in the following ways:

a) Ms. Jones has suffered gender and age discrimination.  As a member of a protected class, Ms. Jones' was denied promotion by Donna Francis when applying for the Medical Certification Specialist 2 position after the position was given to a younger less experienced applicant.  This person was subsequently promoted to a higher position and given a substantial pay raises beyond his level of experience when Ms. Jones was an applicant for the same positions and was more experienced.  Ms. Jones' was not provided any explanation given as to why Jonathan Smith was appointed to the position for which Ms. Jones was amply qualified.

6

b. Retaliation, age discrimination, intra-racial/social isolation/ - Ms. Jones has been set apart from other staff and have faced criticism for her expertise, knowledge and professionalism, and Ms. Jones has been further ostracized for following procedures, pointing out and refusing to do illegal actions when asked to violate the law (i.e., HIPPA violations, confidentiality breaches, destruction of documents to cover errors and shredding of requests for service and other documents), but all the while, the supervisors and workers who follow unethical directives are rewarded for doing everything they are told regardless of illegality.   Shortly after Ms. Jones' EEOC mediation in September 2012, Ms. Andrews met with Ms. Jones and assigned both her personal supervisory duties and those supervisory duties of another MHSD employee (Yolanda Johnson, an employee who was trained by Ms. Jones, but promoted to a higher position and pay grade by Ms. Francis) to Ms. Jones, the named plaintiff.   Ms. Jones avers that she scored higher on the supervisory exam than Yolanda Johnson, who is under 40 years of age.

17.    Ms. Jones' supervisors have also lied to investigators about what happened to her, particularly as to the battery upon Ms. Jones' person.  In fact, the Office of Risk Management confirmed that Ms. Andrews gave conflicting statements in regards to Ms. Jones' battery by Ms. Francis. No one from Metropolitan ever contacted Ms. Jones to give any status report concerning the head-butting incident as agreed during Ms. Jones meeting with the Human Resources Director and MHSD's Compliance officer, until Ms. Jones emailed Paulanner Mack who confirmed that Rose Andrews indicated there had been head contact by Donna Francis to Ms. Jones.

18.  Congress passed the Age Discrimination in Employment Act (ADEA) in 1967. 29 U.S.C. § 621 et seq., to extend anti-discrimination protection in the workplace to individuals 40 years of age or older.

19.  Proving a case of unlawful discrimination under federal requires the complainant times to show unlawful discrimination. This burden is achieved following a three-step analysis: (1) the complainant must carry the initial burden by establishing a prima facie case of unlawful discrimination (i.e., (1) show membership in protected classification, (2) show qualification/application for selection, (3) show rejection/denial of selection, and (4) show person selected was not from protected classification, or no selection made). Once the prima facie case has been presented, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the selection/action taken. At that point, complainant is afforded an opportunity to show the employer's reason is pretextual, and a cover-up for unlawfully discriminatory activity. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 668 (1973); Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981); U.S. Postal Serv. Bd. Of Gov. v. Aikens, 460 U.S. 711, 103 S. Ct. 1478, 75 L. Ed. 2d 403 (1983).

20.   Ms. Jones has also been denied requests for medical leave under the Family Medical Leave Act – for both Ms. Jones and Ms. Jones' dependent children by Ms. Andrews and Ms. Francis. Ms. Jones was also denied requests to follow up medical treatments directly associated with the head-butting which occurred at the MHSD office on March 1, 2012.   Additionally, Ms. Andrews and Ms. Francis also deliberately and routinely made themselves unavailable, delayed, or failed to respond to Ms. Jones' FLMA covered leave requests.

21.    To be eligible for FMLA, the employer must have at least 50 employees within 75 miles of the employee's work site. The worker seeking leave must also have worked for the employer at least 12 months and 1250 hours in the most recent 12 months. FMLA leave is available:

   (a) To care for a new child (whether by birth, adoption or foster care);

   (b) To care for a seriously ill family member (direct family member only);

   (c) To recover from worker's own personal illness.

22.    On March 1, 2012, Ms. Jones was approached by Ms. Donna Francis and without any provocation, was forcefully and deliberately head-butted three times in rapid succession.   Ms. Jones immediately felt head pain and has suffered migraines, stress, and anxiety, as a result of said battery.

23.    Under Louisiana law, a battery is "[a] harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such a contact ..." *Caudle v. Betts,* 512 So.2d 389, 391 (La.1987). The defendant's intention need not be malicious nor need it be an intention to inflict actual damage. *Id.* It is sufficient if the defendant intends to inflict either a harmful or offensive contact without the other's consent. *Id.*  Landry v. Bellanger, 2002-1443, p. 6 (La. 5/20/03), 851 So. 2d 943, 949.   Under Louisiana Civil Code Article 2315, a person may recover damages for injuries caused by a wrongful act of another. According to that Article, "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." La. C.C. art. 2315(A). Historically, fault has been the basis for tort liability in Louisiana. Veazey v. Elmwood Plantation Associates, Ltd., 93-2818 (La.11/30/94), 650 So.2d 712, 717. Furthermore, Louisiana embraces a broad civilian concept of "fault" that encompasses any conduct falling below a proper standard, including intentional torts. *Id.* at 718.

9

24.     Furthermore, "in order to succeed on a battery claim, the Plaintiff must prove "all prima facie elements of the tort, including lack of consent to the invasive conduct." <u>Landry</u>, 02-1443 at 6, 851 So.2d at 954; <u>Touchet v. Hampton</u>, 06-1120, p. 4 (La.App. 3rd Cir.2/7/07), 950 So.2d 895, 898.

25.   Given that Ms. Jones has a prima facie case for battery, along with the pain and suffering, continued medical visits with a neurologist, and medication management, she will successfully prove her claim for Ms. Francis' egregious tortuous conduct.

26.     The intentional head butts were not within the scope of Ms. Francis' authority as the supervisor of the plaintiff and were designed to physically hurt and humiliate the plaintiff. The apparent cover-up by Judge Calvin Johnson and Sirwana Granger cannot be considered qualified immunity.

27.   On July 19, 2012; Donna Francis and Rose Andrews demanded that Ms. Jones attend a meeting with them in which Ms. Jones was told to take back statements Ms. Jones made in an email related to Mrs. Andrews who did not approve Ms. Jones leave request to bring her 13 year old daughter to an orthodontist appointment on the previous day.  During the meeting Ms. Jones, felt she was falsely made culpable for her supervisor's failure to approve the FMLA request, imprisoned by both supervisors and that she could not leave without more reprisals from her supervisor, Rose Andrews and the director, Donna Francis.  The interrogation last over one and a half hours.

28. On July 23, 2012, Donna Francis and Rose Andrews called another meeting with Ms. Jones. They revisited topics from 7/19/12 meeting and wanted a retraction of Ms. Jones' statements about Rose Andrews' in an email.  Ms. Andrews said Ms. Jones was trying to ruin her career and

denied approving leave more readily for her friends although another employee was off for one week in July but Ms. Jones' leave requests were denied, despite having more seniority. Ms. Andrews denied that other staff routinely interrupted Ms. Jones' supervisory conferences with Mrs. Andrews. Ms. Andrews demanded proof of all of Ms. Jones' statements and said that if Ms. Jones wrote anything about any staff in the unit that she would share the information with them. Ms. Jones did not provide what was requested. Ms. Andrews also said to Ms. Jones, "Remember the information I have about you in your personnel file" to which Ms. Jones said "I will not retract my statements".

29. In 2009, Louisiana Laws TITLE 14 Criminal law: RS 14:46 states false imprisonment is the intentional confinement or detention of another, without his consent and without proper legal authority and Under Article 2315 of the Louisiana **Civil** Code, damages for the tort of **false imprisonment** may be recovered if it is proven (1) that plaintiff was detained and (2) that the detention was unlawful. Hughes v. Gulf International, 593 So.2d 776, 780 (La.App. 4th Cir.), writ denied.

30. Ms. Jones claim for worker's compensation benefits, especially medical treatment, was closed as a result of the actions of the defendant(s).


  WHEREFORE, plaintiff prays that the Court:

        Issue a permanent injunction enjoining the defendant from continuing or maintaining the policy, practice and custom of denying, abridging, withholding, or conditioning the rights of employees on the basis of disability which rights are secured by Title VII.

11

As a result of the policies, procedures, practices, and acts of defendants, Plaintiff, Yvette Jones, has suffered violations of her rights, privileges, and immunities under the Constitution and aforementioned statutes and has and continues to suffer physical injury, medical expenses, severe emotional, psychological and financial distress, anguish, humiliation, embarrassment, anxiety, and pain and suffering due to the willful, wanton, and deliberate misconduct of the Defendants in connection with the deprivation of her constitutional and statutory rights guaranteed Fourteenth Amendment of the Constitution of the United States, protected by 42 U.S.C. §2000 (e), Title VII.

Award plaintiff a judgment against defendant in whatever amount.

February 24, 2013
Respectfully submitted\

_____

Reva Lupin
Attorney for Yvette Jones, Plaintiff
6 Tara Place
Metairie, LA 70002
Phone: (504-889-0450)
FAX: 866-613-6209
Email: civilrightslaw@aol.com

12

## *VERIFICATION*

*(STATE OF LOUISIANA)*

*(PARISH OF JEFFERSON)*

YVETTE JONES says:

UNDER PENALTY OF PERJUY, I am a Plaintiff in the within proceeding and I have read and know the contents of the foregoing Complaint and that I know the information contained therein to be true based upon personal knowledge of the same, except as to those matters therein stated to be alleged information and belief, and as to those matters, I believe them.

Signed and dated this _____ day of January, 2013

YVETTE JONES